Filed 2/18/16  In re Joseph O. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JOSEPH O. et al., Persons Coming Under the Juvenile Court Law. | B262005 (Los Angeles County Super. Ct. No. DK00788) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ANN O., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Annabelle G. Cortez, Judge.  Affirmed.

Stephanie M. Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Tracey F. Dodds, Deputy County Counsel, for Plaintiff and Respondent.

_____

Ann O. (mother) appeals from a juvenile court order granting the father, Jesus O. (father), of Joseph O. (Joseph, born Dec. 2003), Timothy O. (Timothy, born May 2006), M.O. (M.O., born Jan. 2007), and Aaron O. (Aaron, born Feb. 2009) the right and responsibility of choosing the monitor for mother's visits.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Detention from mother*

At the time the Los Angeles County Department of Children and Family Services (DCFS) became involved in this matter, mother and father were separated. The family came to the attention of DCFS as a result of a referral received on August 26, 2013, stating that Joseph felt ill after visiting with mother. Allegedly, the illness was caused by the heavy odor of marijuana coming from mother's bedroom.

The social worker interviewed Joseph, Aaron, and M.O.; Joseph told her that mother and the maternal grandparents used marijuana. He said that he could smell it and it almost made him throw up. He denied seeing mother smoking marijuana, but said, "I know she smokes in her room. I always smell marijuana when I visit my mom." Aaron reported that mother smoked drugs that look like a cigarette. When asked about drugs, M.O. said, "[s]moking out of the tube that's bad for you."

The social worker also spoke to mother, who admitted to using marijuana on a daily basis and usually at night. She had a medical marijuana license and used marijuana for back pain and depression. She declined to drug test. She denied ever smoking marijuana in front of the children and denied using marijuana inside the home when the children were visiting.

On September 3, 2013, the children were detained from mother and placed with father. On September 6, 2013, DCFS filed a petition pursuant to Welfare and Institutions Code section 300,[1] alleging that the children needed the protection of the juvenile court.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Both parents appeared at the detention hearing. The juvenile court ordered the children detained from mother and released to father. Mother was ordered not to smoke marijuana. Mother was granted monitored visits with the children; however, if after four consecutive tests her marijuana levels decreased, her visits would be liberalized to unmonitored day visits in a neutral public setting, two to three times per week for up to three hours per visit.

*Jurisdiction/Disposition Report*

Joseph, Timothy, and M.O. reported that mother smoked marijuana.

Mother told the social worker that father has a marijuana license and used to pick up marijuana for her. According to mother, father did not have a problem with her using marijuana medicinally until he left her for another woman. She denied smoking marijuana in her children's presence and claimed that she was able to stop using marijuana to have her children returned to her care.

The social worker also interviewed the children's half-sibling, Elizabeth R. (Elizabeth). She said that mother used marijuana for medicine, but she had not seen mother smoke marijuana. She also denied having seen any other relative smoke marijuana or seeing any drug paraphernalia in the home.

*Supplemental Report and Hearing (Jan. 14, 2014)*

Mother submitted the names of her maternal relatives and a friend to be approved as monitors. Because the maternal relatives had allegations of marijuana use, the social worker suggested that mother ask a neutral person from the church who could be cleared as a monitor.

The juvenile court ordered DCFS to follow up on mother's proposed monitors. It also ordered that mother visit by herself or with persons approved by DCFS.

*Supplemental Report and Hearing (Feb. 10, 2014)*

The social worker explained that the maternal grandfather and cousin were not viable monitors because of their marijuana use. Mother refused to have the paternal aunt monitor her visits.

At the adjudication hearing, mother entered a plea to the amended petition and the children were placed in father's home. Mother was ordered to participate in counseling and drug testing. Mother was granted monitored visits by a DCFS-approved monitor.

*Status Review Report (Aug. 15, 2014)*

The children were doing well in father's home. Mother was doing well in her programs, but, at a team decisionmaking meeting, she complained that she had not yet received unmonitored visits, and she wanted visits to take place at her home. DCFS was concerned with visitation at her home because she lived with the maternal grandfather, who had viewed underage girls in sexually explicit lingerie online. Before the children could visit in the home, mother would have to speak to him about his activities to ensure that the children would not be exposed to pictures or pornographic material. Mother responded that she did not think that there was anything wrong with him viewing girls in lingerie. She was still in denial about her marijuana use and said that she was only smoking cigarettes. Then she stated that she was using medical marijuana. She would not accept responsibility that her marijuana use impacted Joseph.

DCFS recommended that the juvenile court terminate family reunification services for mother, order that the children remain in father's care, and terminate the case with a family law order granting the parents joint legal custody with father having full physical custody. Mother's visits were to remain monitored.

*Last Minute Information for the Court (Aug. 15, 2014)*

Mother and the monitor, maternal cousin Theresa S. (Theresa), expressed concerns about the care and supervision that the children were receiving in father's home. The social worker investigated and recommended that Theresa be removed as a monitor as she failed to appropriately service the visits and did not follow the instructions.

*Interim Review Report (Oct. 15, 2014)*

Mother reported that she "was not in agreement with" the paternal aunt acting as the monitor, "as they have never had a good relationship."

DCFS concluded that mother continued "to be in partial compliance with DCFS and court orders." Mother failed to contact the social worker "regarding recommended

4

visitation schedule and monitor." Thus, DCFS recommended that family reunification services for mother be terminated. It further recommended that the juvenile court terminate jurisdiction with a family order, "whereby the parents share in joint legal custody and father have physical custody of the children." It was further recommended that mother's visits remain monitored; DCFS approved the paternal aunt as "the monitor for mother's visits as mother cannot provide another monitor."

*Contested Section 364 Hearing (Oct. 15, 2014)*

First, the juvenile court received various reports and documents into evidence. Then, father testified. Among other things, father indicated that he could not effectively coparent the children with mother because she refused to communicate with him. She had made allegations of abuse against him; those allegations were false.

Mother testified next. Regarding her inconsistent visitation, she explained that she "did not feel safe with any of the monitors." Her proposed monitors had been "either approved and then fired or denied."

*Last Minute Information for the Court (Dec. 2014)*

Mother was visiting the children at DCFS's office as she had not yet provided a monitor. She did not want the paternal aunt to monitor the visits.

There was also evidence that father had sexually abused Elizabeth.

DCFS recommended that the juvenile court case be terminated with a family law order, giving the parents joint legal custody and giving father full physical custody of the children. It was further recommended that mother's visits remain monitored; DCFS reiterated that it had approved the paternal aunt as monitor and that mother had still not provided another monitor.

*Continued Contested Section 364 Hearing (Dec. 30, 2014)*

After entertaining oral argument, the juvenile court found that the conditions that justified the initial assumption of jurisdiction under section 300 no longer existed. The juvenile court adopted DCFS's recommendation for joint legal custody with sole physical custody to father. It found father's testimony credible. Mother was granted monitored

visits a minimum of two to three times a week, for three hours per visit. Father was to select a monitor and ensure that there was one available to monitor mother's visits.

*Appeal*

Mother's timely appeal ensued.

## DISCUSSION

Mother argues that the juvenile court erred by giving father the authority to choose the visitation monitor. We review the juvenile court's order for abuse of discretion. (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1284.)

"When a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make 'exit orders' regarding custody and visitation. [Citations.] Such orders become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court. [Citation.] [¶] The power to determine the right and extent of visitation by a noncustodial parent in a dependency case resides with the court and may not be delegated to nonjudicial officials or private parties. [Citation.] This rule of nondelegation applies to exit orders when dependency jurisdiction is terminated. [Citations.] [¶] A visitation order may delegate to a third party the responsibility for managing the details of visits, including their time, place and manner. [Citation.] That said, 'the ultimate supervision and control over this discretion must remain with the court . . . .' [Citation.] Several appellate courts have overturned visitation orders that delegate discretion to determine whether visitation will occur, as opposed to simply the management of the details. [Citations.]" (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122–1123.)

Mother contends that because father may choose the paternal aunt as a monitor for her visitation, it amounts to giving him veto power over visitation. We disagree. Mother was given the option of providing a monitor, but she did not do so; instead, she requested that DCFS provide her with a monitor. Mother freely chose not to visit the children when the paternal aunt monitored. There is no evidence that the paternal aunt ever made false allegations against mother; there is no evidence that the paternal aunt ever harmed mother

6

or did anything to make mother feel unsafe. And, the paternal aunt had been approved by DCFS to monitor mother's visits.

Under these circumstances, we conclude that the juvenile court did not err in granting father the authority to choose the monitor for mother's visits. (*In re A.C.* (2011) 197 Cal.App.4th 796, 799–800.)

## DISPOSITION

The juvenile court's order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, Acting P. J.
        ASHMANN-GERST

We concur:

_____, J.
        CHAVEZ

_____, J.
        HOFFSTADT